**BOYLES v. GRESHAM.**

**No. 14675.**

Court of Civil Appeals of Texas. Dallas.

June 26, 1953.

Rehearing Denied July 24, 1953.

With out any Bond or any Court action that can be avoided.

they to wind up my affairs in any way they See fit.

U. C. Boyles Refrigeration Supply Co

Charlie Hill Superior Ice Co

Should these Gentleman need a third man Would Suggest

Walker. National Bank of Commerce

Each of these Gentleman to Receive $500.00 for his Services

I have tried to make my wishes plain. of Course these Crooked Lawyers Would want a Lot of Whereas and Wherefores included in this.

not much in favor of the organized Charities they are too Cold blooded also not much in Favor of any person over 21—Benefitting by my Kick off unless there is a good reason

am inclined to play the children

they are not Responsible for being here and Cant help themselves

"Terrell—Feb. 7—1950

have Let this Letter get cold and Read it again—to See if it Seemed a *but* Right

dont See much wrong except no

wheres an Wherefores—excuse me

"Lon Gresham"

---

Bonney, Paxton & Wade, and Saner, Jack, Sallinger & Nichols, Dallas, for appellant.

Ralph W. Currie and J. C. Muse, Jr., Dallas, for appellee.

DIXON, Chief Justice.

This is a will contest. The writing in controversy was offered for probate by U. C. Boyles, appellant, as the holographic will of Lon Gresham, deceased. Its probate was contested by Arch V. Gresham, who, so far as the record before us indicates, is the son of deceased. From a judgment of the District Court refusing probate, Boyles has appealed.

We quote the disputed instrument in its entirety:

"Terrell Tex Jan 12—1950

"this Letter is Written With the idea that Some thing might happen to me. that I would be wiped out Suddenly if this Should Happen

my business would be in awful shape no relatives, nobody to do a thing So, this is written to try to have my affairs wound up in a reasonable way in case of my Sudden Death. Would Like to have all of my affairs, Cash all assets including any Bank Balance turned over to Parties named below

It will be observed that the deceased wrote "no relatives, nobody to do a thing." However upon the trial of the case in the District Court, the proponent stated that he would not require the contestant, who claimed to be a son, to prove his interest in the estate, or his right to maintain the contest. So no issue in that respect is before us on this appeal.

Is the instrument a will? If so, who gets the testator's property?

It is appellant's contention, first, that the writing under consideration is sufficient to constitute a will which vests full legal and beneficial title to the estate of deceased in U. C. Boyles and Charlie Hill. Appellant says that the words "turned over to Parties named below" effectively disposed of the beneficial interest in the property of deceased. The case of Drinkard v. Hughes, Tex.Civ.App., 32 S.W.2d 935, is cited in support of such contention.

We do not disagree with the holding in the cited case. But we think that in construing this, or any other document offered as a will, we must consider the writing as a whole. Renner v. German, Tex.Civ.App., 207 S.W.2d 671 (writ ref.). And when we do that, we are convinced that deceased did not intend to make Boyles and Hill his beneficiaries  The deceased stated what his purpose was in naming Boyles and Hill: They were to "wind up" his affairs, calling on Walker to help if they thought he was needed. They were to receive $500 for their services. Why should they receive pay for their services if they were to receive the property as beneficiaries? Moreover deceased wrote that he was "not much in Favor of any person over 21—Benefitting by my Kick off." Presumably appellant Boyles is over 21 years of age, for in his application to probate he says he is not disqualified from accepting letters testamentary. Charlie Hill, the other person named, is now deceased. No claim is made in behalf of his estate. We overrule appellant's first contention.

Appellant says next that if the deceased did not intend to name Boyles and Hill as his beneficiaries, he did intend to name them as executors; and that a document may be accepted and probated as a will if it names only executors, without naming any beneficiaries.

The language used by Lon Gresham in the instrument before us might possibly be construed to mean that he intended to appoint Boyles and Hill his executors. But if we were to so construe deceased's language, would the naming of executors without disposing of property, or designating any beneficiaries, be sufficient to constitute the instrument as a will, as appellant contends? We are aware that in most jurisdictions such a writing is considered a will, and is entitled to probate as such. 57 Am. Jur. 55; 68 C.J. 884; 147 A.L.R. 640.

However we believe that under the law of this State the writing before us does not constitute a will. In Texas our statutes have been construed to mean that a will must make a testamentary disposition of at least, a part of the testator's property. Langehenning v. Hohmann, 139 Tex. 452, 163 S.W.2d 402; Maxey v. Queen, Tex.Civ. App., 206 S.W.2d 114 (error ref.); In re Campia's Estate, Tex.Civ.App., 161 S.W.2d 164; Williams v. Noland, 10 Tex.Civ.App. 629, 32 S.W. 328 (error ref.). The case of Williams v. Noland, supra, is indicative of the rule we believe is controlling. In that case a testator named a guardian for his child, as our law provides that he may, but did not dispose of his property. The court held it was not a will because it did not dispose of the testator's property.

In many jurisdictions an administration of a deceased person's estate is required by statute. In such jurisdictions we can understand that one might well prefer to name persons of his own selection to administer his estate, rather than have a public administrator, or some one appointed by the court to act. Under such circumstances a writing naming only executors could reasonably be accepted as a will, it being implied that since the testator named no beneficiaries he intended for his heirs at law to take. In re Hickman's Estate 101 Cal. 609, 36 P. 118.

But in Texas an administration of the estate of a deceased person is not required. In fact, an administration cannot be granted unless there is a necessity therefor, the necessity to be determined by the court hearing the application. Art. 3356 R.C.S. Usually the existence of debts owed by the estate must be shown. Even then, it has become a recognized policy to allow the heirs at law to avoid the expense and delay of an administration by paying the debts themselves, or by giving bond for their payment. Under such circumstances a writing which went no further than to name executors without disposing of the property of deceased, or naming beneficiaries, would be useless and meaningless. We overrule appellant's second contention.

Finally, appellant claims, in the alternative, that the instrument before us vests title to the estate in Boyles and Hill as trustees of a charitable trust.

We shall not extend this opinion into a lengthy discussion of charitable trusts.

Suffice it to say, they are favored by the law. If it is clear from the wording of a will that the testator intended to create a charitable trust, a liberal interpretation will be given to the instrument in an effort to carry out his wishes. As to beneficiaries, he need only describe the objects of his bounty in a broad, indefinite way. 9 Tex. Jur. 55; 63. We have examined the instrument before us with great care in the light of these principles, for it is our wish as well as our duty to give it effect as a charitable trust if the languge used by the deceased will reasonably permit us to do so.

We therefore regret to say that in our opinion the document in question, even when given the benefit of a liberal construction, is insufficient to be given effect as a charitable trust.

■ Deceased does not really direct that his property shall be used for charitable purposes. He says that Boyles and Hill are to *"wind up my affairs in any way they See fit."* (Emphasis ours.) This language certainly does not bind the two men named to use the money only for charitable purposes. Appellant himself does not so understand it, for in his first contention he claims that the language used has the effect of vesting the legal and beneficial title in the estate in himself and Hill. If an instrument bestows upon trustees the unrestricted authority claimed by appellant, the trustees would be free to use the property for private purposes or for charitable purposes as they might think best. It is well settled that such an arrangement is not a charitable trust. Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223; Benevolent & Protective Order of Elk v. City of Houston, Tex.Civ. App., 44 S.W.2d 488 (writ ref.); 14 C.J.S., Charities, § 40, p. 478, note 81: 10 Am.Jur. 656, note 15.

■ The words "wind up" are defined as meaning: "To bring to a conclusion or settlement; as, to wind up one's affairs; * * *." Webster's New International Dictionary. We do not believe that they can reasonably be construed to establish a charitable trust. Ordinarily, charitable trusts require a continuing administration which is often permanent. It is in recognition of this characteristic, as well as because of their laudable purpose, that they are exempt from the law against perpetuities.

The language used by the deceased is mostly negative. It is plain that he had no confidence in lawyers; he did not care much for organized charity (this is the only time the word charity appears in his writing); he did not really favor anybody over 21 benefiting by his death except for good reason and he did not tell what good reason might be—such as poverty, ill health, religious dedication, or any of the other reasons for charitable donations. Of course, there must be something more than such negative statements if we are to give effect to this instrument as a charitable trust. There must be something affirmative and positive.

■ The nearest deceased comes to an affirmative statement in describing his purposes is "inclined to play the children." If we interpret these words to mean "I am inclined to leave my money to children," we still cannot interpret them to mean that deceased had *decided* to leave his money to children. Our language is replete with expressions which, by common understanding, fall far short of meaning that the speaker has come to a decision. For example, most children understand very well that when a parent says, "I have a notion to spank you," he has not really determined to administer the spanking. Of similar import are such indecisive statements as, "I *ought* to quit smoking," or "I *am thinking* of selling my home." In this same category is the phrase used by deceased, *"inclined* to play the children." We cannot accept these words as a directive to set up a charitable trust for children.

We believe that the trial court correctly refused to admit the proffered document to probate as a legal will. Appellant's points on appeal are overruled and the judgment of the trial court is affirmed.

Affirmed.