Fred R. ELDRIDGE et al., Appellants,

v.

MARSHALL NATIONAL BANK et al., Appellees.

No. 1073.

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 30, 1975.

Rehearing Denied Sept. 17, 1975.

---

George Red, Red & Kemp, William R. Powell, Jr., Lew W. Harpold, Hofheinz & Harpold, Isaac C. Satterwhite, Houston, for appellants.

Richard E. Green, Asst. Atty. Gen., Austin, Gaines Baldwin, Abney & Baldwin, Marshall, Ben H. Rice, III, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellees.

TUNKS, Chief Justice.

This is a will construction case. The district court rendered a summary declaratory judgment upon the motion of the Attorney General of Texas, construing the will to establish a charitable trust and holding that all property remaining after specific legacies and bequests passed to the trust under the will. Appellants, Fred R. Eldridge, et al. (the heirs), appeal from the granting of the summary judgment in favor of appellees and from the denial of their motion for summary judgment that the charitable trust provisions of the will were invalid.

Hope Pierce Tartt died on July 26, 1961 at the age of 90 years. Appellee, Fred Eldridge, was appointed as temporary administrator of her estate, and he applied to the Probate Court of Harris County for the probate of a holographic will executed by Mrs. Tartt in July 1947. On November 29, 1961, Eldridge brought a suit in a Harris County District Court in the nature of a declaratory judgment action seeking a construction of Mrs. Tartt's will. On January 9, 1962, the probate court entered an order admitting the will to probate but denying Eldridge's application for appointment as trustee of the scholarship fund referred to in the will. No appeal was taken from that order.

In March 1964, Eldridge filed a petition to declare heirship in the probate court. In

February 1965, the district court entered an order abating the declaratory judgment action, which was still pending, until the issue of the disposition of the estate by will was determined by the probate court.

On January 11, 1973, the probate court rendered an order declaring the heirs of Hope Pierce Tartt and their respective shares and interests in her estate. The court held that none of her real or personal property passed to the scholarship fund but that it passed to her heirs at law under the laws of descent and distribution. The heirs at law, the executors and the Attorney General of Texas, all appealed from the probate court's order to the district court.

On May 7, 1973, the district court entered an order consolidating the declaratory judgment action for construction of the will with the appeals from the probate court. Both sides filed motions for summary judgment and on May 28, 1974, the court rendered its final judgment granting appellees' motion for summary judgment and denying that of appellants. In so doing, the court held that it was unnecessary for it to determine who were Mrs. Tartt's heirs at law and the share of each of them in any intestate property, because all of her property passed at death under her will to the scholarship fund, a charitable trust. Appellants excepted to this judgment and gave their notice of appeal.

■ The appellant heirs at law contend by points of error that the district court had no jurisdiction over this case. Those points of error are overruled. At the time these appeals from the probate court to the district court were perfected, Tex.Prob.Code Ann. § 5 (1956) gave the district court appellate jurisdiction over all probate matters. The amendment of Article 5, Section 8 of the Texas Constitution and of Section 5 of the Probate Code, giving the Courts of Civil Appeals jurisdiction of such appeals from the probate court, did not deprive the district court of jurisdiction of cases in which appeals had been perfected before their effective date. *Atkins v. Rayburn*, 506

S.W.2d 208 (Tex.Sup.1974). Even if there were some question as to the jurisdiction of the district court over the suit to construe the will while the heirship proceeding was pending in the probate court, that question was removed when the appeal to the district court in the probate proceeding was perfected.

■ Appellants' major contention on this appeal is that the trial court erred in holding that the will of Hope Pierce Tartt created a valid public charitable trust. Since public charitable trusts are favored by courts of equity, they will be sustained if ". . . from the four corners of the will, a purpose can be gathered to establish a trust for a class sufficiently definite to be legally ascertained." *Gidley v. Lovenberg*, 35 Tex.Civ.App. 203, 79 S.W. 831, 835 (1904, writ ref'd).

Mrs. Tartt's will first provides for specific cash bequests for various friends and relatives and for funds to provide for perpetual care of her deceased parents' graves. She next gives her family home in Marshall, Texas, to the First Methodist Church to be used as a parsonage, or alternatively, as a co-operative and boarding house for working women. The will provides that if any of the furnishings in the home are at any time removed therefrom, they are to become the property of the trustees of her estate, ". . . and from the sale of these objects of furniture or furnishings— these moneys are to be added to the Scholarship Trust—That is being arranged".

After making additional bequests and providing funds for a family monument, the will sets out the provisions which are at issue on this appeal:

Having no obligation and owing no debts—All moneys in Checking Accounts in First National Bank in Houston and Marshall Natl Bank Marshall—after necessary expenses are paid—including Savings Accounts (2) in First National in Houston Savings Account in Second National Bank Houston and Savings Account in Houston National Bank Hous-

ton also all bonds in Deposit Box First National in Houston and Bonds for $10,-000. held in Trust by Second National Bank of Houston—these and all real estate—are to form a Scholarship Fund—to be projected into the future

Am appointing Marshall National Bank, in Marshall and Charles R. Martin County Auditor, Marshall as my Executors—If at any time Mr. Martin is unable to attend to these duties it is my wish that the Pastor of The First Methodist Church in Marshall be CoExecutor at all times in connection with the Marshall National Bank in Marshall

I hereby disinherit all other persons claiming any interest in the estate whether blood relation or not—

▮ Appellants' first contention is that the will does not manifest a present intention to create a charitable trust. In deciding this question, we must look to the four corners of the instrument and determine its meaning from its language. *Powers v. First Nat. Bank of Corsicana,* 138 Tex. 604, 161 S.W.2d 273 (Tex.Com.App.1942, opinion adopted); Restatement (Second) of Trusts § 351 (1959).

Appellants point to the words used by Mrs. Tartt in connection with the scholarship fund. She provides that if any of her home furnishings are removed, they are to become the property of the trustees of her estate and all proceeds derived from their sale are "to be added to the Scholarship Trust—*That is being arranged.*" She also provides that certain specified monies ". . . and all real estate—*are to form* a Scholarship Fund—*to be projected into the future*". (emphasis added)

The cases which appellants cite are distinguishable. In *In Re Sorenson's Estate,* 370 S.W.2d 225 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.), it was held that two letters from the deceased to the appellant failed to meet the test of a holographic will. In her letters the decedent requested the appellant to have a will drawn up for her and expressed her desire to leave all her

property to him. The Court held that there was no evidence in the letters that the decedent intended for them to constitute her will or to transfer or dispose of any of her property. In *Boyles v. Gresham,* 260 S.W.2d 144 (Tex.Civ.App.—Dallas 1953), *rev'd on other grounds,* 153 Tex. 106, 263 S.W.2d 935 (1954), the Court held that the statement in a holographic will that the testator was "inclined to play the children," even if construed to mean that he was inclined to leave his money to children, did not show that he had actually decided to leave his money to children. Unlike *Sorenson,* there is no contention by appellants in this case that Hope Pierce Tartt did not intend for the instrument of July 1947 to be her last will and testament. Unlike *Boyles,* the words she used do not express a mere inclination to leave her property to a scholarship fund but show her present intention to do so.

▮ Appellants take the words "is being arranged" and "are to form" out of context and argue that they demonstrate that Mrs. Tartt was referring to something then occurring extrinsic to the will or to something which she intended in the near future to cause to occur. However, the correct rule of construction was stated in *Cleveland v. Cleveland,* 89 Tex. 445, 35 S.W. 145, 147 (1896), as follows:

> The intention of the testator, as shown by the language used in the instrument, . . . must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language, when read in connection with the other provisions.

When the provisions relied upon by appellants are considered in the context of the entire instrument, their apparent intent is that, after carrying out her directions and paying necessary expenses, the executors are to form and to project into the future a scholarship fund. There is no question as to the testamentary character of the other

provisions in the will. It would be unreasonable to question Mrs. Tartt's testamentary intent as to the scholarship fund provisions since they involve the vast bulk of her estate. In this provision, she directs that "[a]ll moneys (sic) . . . all bonds . . . and all real estate" are to form the scholarship fund. This evidences an intention that after her death the mentioned properties are to be used to form a scholarship fund.

We hold that the will of Hope Pierce Tartt manifests a present intention to create a testamentary trust.

Appellants next argue that the will does not create a valid charitable trust because it does not designate the purpose of the scholarship fund and because it does not designate whether it is to be a public or private charity. Appellants cite *Allred v. Beggs,* 125 Tex. 584, 84 S.W.2d 223, 228 (1935), in support of their contention. In that case, the Attorney General sought a temporary injunction against the executors of an estate in aid of the testator's allegedly charitable bequests. In his will, the testator left the final disposition of his estate to the personal discretion of his sister and his executor. He provided that within five years of his death, his estate was to be sold and the proceeds thereof, at the discretion of his sister and his executor, were to be given to " '. . . such charities and *worthy objects* as they . . . shall determine . . . .' " *Id.* at 224. (emphasis added) It was held that this provision failed to create a valid public charitable trust. The Court noted that many "worthy objects" are neither public nor charitable, and that

> [w]hen a fund or property is so given that it may or may not be used for charity, or . . . for a charitable object of a public character, without violating the directions of the will, the case is not one for enforcing the gift as a charity in a suit by the Attorney General. . . . In this respect it is evident that the will creates a purely personal trust in the executor. *Id.* at 228-29.

Appellants argue that in the case at bar, Mrs. Tartt's will is even more vague than the will involved in *Allred,* because she not only does not specify that the scholarship fund is to be used exclusively for public charitable purposes but she fails to even use the word *charity.* Appellants argue that, in order to validate the scholarship fund provision, the courts would have to prohibit the trustee from using the fund for non-charitable and non-public purposes and that it would be necessary for the courts to designate the portion of the public to benefit from such scholarship fund. Appellants assert that this would amount to the courts making a will for the testatrix, in violation of the laws of this state. *Allred v. Beggs, supra* at 229.

■ We disagree. Unlike the will in *Allred,* which created a purely personal trust in the executor, the will in the case at bar limits the executors' use of the estate to a scholarship fund, which is, by definition, a valid charitable use. *See Russell v. Allen,* 107 U.S. 163, 172, 2 S.Ct. 327, 27 L.Ed. 397 (1883); *Powers v. First Nat. Bank of Corsicana, supra,* 161 S.W.2d at 280; Restatement (Second) of Trusts §§ 368, 370.

In *Boyd v. Frost Nat. Bank,* 145 Tex. 206, 196 S.W.2d 497 (1946), the Court held valid as a public charitable trust a will provision devising all personal property to a trust, the net income from which was to be given to such charities as the trustee in his absolute discretion would select. In answer to the heirs' argument that a bequest to charitable purposes would include gifts to private charities, the Court said that any ambiguity in the language which the testator used must be resolved in favor of legality. *Id.* at 503. In *Wooten v. FitzGerald,* 440 S.W.2d 719, 723 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.), the Court held that it is not necessary for the testator to use the word *charity* in order to create a valid charitable trust. In *Taysum v. El Paso Nat. Bank,* 256 S.W.2d 172 (Tex.Civ.App.—El Paso 1952, writ ref'd), the Court was asked to decide whether a will provision leaving the residue

of an estate to set up a research foundation in electricity created a valid public charitable trust. The Court held the provision to be valid, although the heirs argued that it was not clear that the research would not be conducted for private profit. The Court said that although the matter was not free from doubt, ". . . in such circumstances the construction which will give it effect will be adopted and that which would defeat it rejected." *Id.* at 176.

◼ Appellants next argue that the scholarship fund provision is invalid because it fails to name trustees or to transfer property to another person to hold in trust for charitable purposes.

Appellants rely on *City of Haskell v. Ferguson,* 66 S.W.2d 491 (Tex.Civ.App.—Eastland 1933, no writ), for the proposition that Mrs. Tartt's designation of properties to the scholarship fund was not sufficient to establish a charitable trust absent the actual transfer of title to another person. In that case, the temporary administrator brought suit to construe the following provision of the decedent's will: "I want a hospital built . . . in memory of my husband . . . to cost $50,000 . . .; if I live I expect to have it done myself." The will did not establish a charitable fund, it named neither an executor nor a trustee, nor was there any provision for operating or maintaining the hospital once it was built. Due to these practical obstacles to carrying out the will provision, the Court declared it invalid. However, in the case at bar, Mrs. Tartt's will establishes a fund. This fund can be effectuated by the executors, a bank with trust powers and the pastor of a church.

It is a general rule of equity that a trust will not fail for lack of a trustee; if a trustee be named and refuses to act or the instrument attempting to create a trust fails to name a trustee, the court will appoint a trustee to carry out the manifest intent of the settlor. *Taysum v. El Paso Nat. Bank, supra,* 256 S.W.2d at 176.

◼ Appellants cite The Texas Trust Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–7 (1960) and the Restatement (Second) of Trusts § 349 for the proposition that it was necessary for Mrs. Tartt to transfer title to her property to another person to hold it upon a charitable trust. The Texas Trust Act only applies to private trusts. Although charitable trusts may be created in the same way as private trusts, they may also be created without complying with the strict requirements governing private trusts. The rule is stated in Comment *e* to Section 397 of the Restatement of Trusts, as follows:

If the owner of property devises or bequeaths it for charitable purposes, and not only does not name a trustee but also does not use language indicating that the property is to be held upon trust, nevertheless the disposition is valid. Thus, if a testator bequeaths a certain sum "to charity," a charitable trust is created. So also, a charitable trust is created where the testator directs that a certain sum should be used to aid needy students, or to assist the poor.

In such cases the court will either appoint a trustee to carry out the purpose or will approve a scheme to carry it out . . . .. *Id.* at 287.

◼ Appellants also contend that the scholarship fund provision is void for vagueness as to beneficiaries. We have held that any ambiguity in the instrument will be construed in favor of the validity of the charitable trust, so that it will be limited to public charitable uses. Although a private trust must provide for definitely ascertainable beneficiaries in order to satisfy the rule against perpetuities, no such rule is applicable in the case of charitable trusts. Restatement (Second) of Trusts § 364, Comment *a* at 244. The distinction between private and charitable trusts was there stated as follows:

In the case of a charitable trust the persons who are to receive benefits from the

trusts need not be designated; the beneficial interest is not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes beneficial to the community. These purposes are ordinarily enforceable not at the suit of persons who are to receive benefits under the trust, but at the suit of the Attorney General, as representative of the community . . ., although there may be beneficiaries having a special interest in the enforcement of the trust who can maintain a suit to enforce it. *Id.*

In order to create a valid public charitable trust, the beneficiaries must be indefinite in number. Otherwise, the trust will be a private one. *Russell v. Allen, supra,* 107 U.S. at 167, 2 S.Ct. 327; *Powers v. First Nat. Bank of Corsicana, supra,* 161 S.W.2d at 283; *Taysum v. El Paso Nat. Bank, supra,* 256 S.W.2d at 175. In this case, Mrs. Tartt's will gives sufficient identification to the class of beneficiaries so that the trustees will be able to effectuate her intent.

■ Appellants also contend that the scholarship fund provision lacks the material essential elements of a trust because it does not expressly charge the donee with the duty of holding the property in trust or of disposing of it in some particular way, but merely expresses a wish as to the disposition to be made. Appellants cite *McMurray v. Stanley,* 69 Tex. 227, 6 S.W. 412 (1887), and 57 Tex.Jur.2d, *Trusts* § 28 (1964), for the proposition that in order for a trust to be created the words of the testator must be construed as imperative. This proposition is only applicable where the issue is whether or not the capacity in which a person holds property is as a trustee or in his own right, which issue is not presented here. Whoever administers the scholarship fund can only hold the property on behalf of such fund and not for himself.

All of appellants' points of error asserting the invalidity of the scholarship fund provision in the will of Hope Pierce Tartt are overruled.

■ Appellants next contend that the trial court erred in overruling the motion to quash the pleadings of the Attorney General of Texas because he has a conflict of interests. They argue that he represents, on the one hand, the State Comptroller of Public Accounts for the collection of inheritance taxes upon Mrs. Tartt's intestate properties; and that, on the other hand, he represents the public by claiming that these same properties passed testate to a public charitable trust as devisee.

This point is overruled. Tex.Rev.Civ. Stat.Ann. art. 4412a, § 2 (1966) provides as follows:

For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to . . . any suit or judicial proceeding, the object of which is:

a. To terminate a charitable trust or to distribute its assets to other than charitable donees, or

.    .    .    .    .

c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust . . . ..

There were certain properties in the estate of Mrs. Tartt at the time of her death which were omitted from her will. These included her jewelry and funds on deposit at the Texas National Bank, San Jacinto Savings & Loan Association and Home Savings & Loan Association. Those items were of a value of $215,000. The appellants contend that even if it be held that the will created a charitable trust, the gifts to it were specifically named and did not include these items so that as to them Mrs. Tartt died intestate.

■ The trial court's judgment recites that ". . . all undistributed properties and claims belonging to the Estate of Hope Pierce Tartt passed under her Will, at the time of her death, to form a Scholarship Fund. . . ." We overrule the conten-

tion of the appellants that the trial court's judgment should be reversed because Mrs. Tartt died intestate as to some of her property. The question as to that facet of the case is now moot. The property as to which Mrs. Tartt died intestate was the first to be used for the payment of debts, expenses of the estate and cash legacies. *Thompson v. Thompson,* 149 Tex. 632, 236 S.W.2d 779 (1951); *Currie v. Scott,* 144 Tex. 1, 187 S.W.2d 551 (1945); 18 M. Woodward & E. Smith, Texas Probate and Decedents' Estates § 952 (1971); 61 Tex.Jur.2d, *Wills* § 231 (1964). The record reflects that as of December 31, 1973, the amount paid out of the estate for claims, legacies and expenses, exclusive of the estate and inheritance taxes for which a refund claim is pending, was in excess of $700,000. Those properties as to which Mrs. Tartt died intestate have, therefore, long since been spent so that the question as to the rights of the heirs to them is moot.

The judgment of the trial court is affirmed.