Vernell BODE et al., Appellants,

v.

Milton LOEFFLER, Independent Executor of the Estate of Norma Raeke, Deceased, Appellee.

No. 15534.

Court of Civil Appeals of Texas, San Antonio.

July 21, 1976.

Rehearing Denied Sept. 8, 1976.

Senterfitt & Adams, Richard T. Miller, San Saba, for appellants.

John E. Banks, Banks & Banks, Joe Frazier Brown, San Antonio, John L. Hill, Atty. Gen. of Texas, Herman I. Little, Jr., Asst. Atty. Gen., Austin, for appellee.

KLINGEMAN, Justice.

This suit involves the construction of the joint and mutual will of Otto and Norma Raeke. The suit was brought by the executor of the estate of Norma Raeke, who

sought a declaration by the trial court as to the manner in which he should distribute the property held by him as executor. The heirs of Norma Raeke, the heirs of Otto Raeke, the deceased husband of Norma Raeke, and the Board of Pensions of the Southwest Texas Conference of the Methodist Church (hereinafter called Board of Pensions) were named as defendants. All of the heirs of Otto Raeke either disclaimed or failed to answer. The Board of Pensions contended that under the joint and mutual will of Norma Raeke and Otto Raeke, all of the property of Norma Raeke, except the household furnishings and personal effects, passed to it as trustee. The heirs of Norma Raeke contended that such property could not pass under the terms of the will and should pass according to the laws of intestate succession.

Trial was to the court without a jury. The court found that it was the intent of the testators to leave their residuary estate in trust for retired ministers within the Southwest Texas Conference of the Methodist Church and the Board of Pensions should administer the trust. Judgment was rendered awarding all of the property owned by Norma Raeke at her death, except the household furnishings and personal effects, to the Board of Pensions as trustee of a perpetual trust for the benefit of the specified retired ministers. This is an appeal by the heirs of Norma Raeke.

The pertinent portion of the joint and mutual will of Otto and Norma Raeke, here involved, read as follows:

SECOND. Subject to the provisions of the foregoing paragraph hereof, it is our will and desire that the survivor of us, Otto C. Raeke or Norma Raeke, as the case may be, shall, with the rights and authority below given, have all of the estate of every description, real, personal or mixed, and wheresoever situated, which either or both of us may own, to be used, occupied, enjoyed, conveyed or expended by, and during the life of such survivor, as such survivor shall desire. THIRD. In the event that we should die as the result of a common disaster, or

upon the death of the survivor of us, subject to the provisions of the first paragraph hereof, we do hereby give, devise and bequeath the sum of Two Thousand and no/100 Dollars to Alfred Raeke, the brother of Otto C. Raeke, if he is living, and the residue of our estate to the Retired Ministers' Fund of the Southwest Texas Conference of the Methodist Church. In the event that Alfred Raeke should not be living when he is entitled to take hereunder, the property herein bequeathed to him shall also pass to the Retired Ministers' Fund of the Southwest Texas Conference of the Methodist Church. We do hereby direct that the corpus of the property herein devised and bequeathed to the Retired Ministers' Fund of the Southwest Texas Conference of the Methodist Church shall not be spent but the same shall be invested and all income and revenue derived therefrom shall be used as deemed most advisable by the trustees of such fund.

Appellants assert that the trial court erred (1) in failing to hold that the trust sought to be created violates the rule against perpetuities; (2) in holding that the trust sought to be created was a charitable trust; (3) in applying the doctrine of Cy Pres to such will; (4) in holding that the Board of Pensions was the proper entity to receive the property sought to be bequeathed in trust; (5) in rendering judgment that the will in question vested title to the property of the estate of Norma Raeke, except household furnishings and personal effects, in the Board of Pensions as trustee for the benefit of retired ministers of the Southwest Texas Conference of the Methodist Church. All points of error will be discussed together.

Otto Raeke and wife, Norma Raeke, executed a joint, mutual, and contractual will on July 11, 1950. Otto Raeke died on January 5, 1962; the joint and mutual will here involved was duly admitted to probate; letters testamentary were issued to Norma Raeke; and, Norma Raeke accepted the benefits which were bestowed upon her by such will. During his lifetime, Otto Raeke

had been a Methodist minister and had qualified for retirement benefits under church law. Otto Raeke collected a substantial sum of retirement benefits, as did Norma Raeke by virtue of her status as the widow of a retired minister. On December 9, 1972, Norma Raeke died and shortly thereafter Milton Loeffler offered the joint and mutual will of Norma and Otto Raeke for probate. Such will was duly admitted to probate and letters testamentary were issued to Milton Loeffler. The executor had difficulty in determining the legal effect of the third paragraph of the will, hereinbefore set forth, and filed suit seeking judicial guidance in distributing the property held by Norma Raeke at the time of her death. Alfred Raeke, the brother of Otto Raeke, preceded Norma in death. There is no dispute pertaining to that portion of the will devising household furnishings and personal effects.

It is undisputed that there is no entity named "Retired Ministers' Fund of the Southwest Texas Conference of the Methodist Church." There is evidence that the Board of Pensions is the entity within the Southwest Texas Conference of the Methodist Church that administers funds for retired ministers.

The Board of Pensions is a non-profit Texas corporation, the purposes of which are stated by the charter as follows:

1. To determine and report to the Annual Conference the names of retired ministers, and the widows and children of the deceased ministers of the Southwest Texas Annual Conference who are entitled to annuities, pensions, or special relief.

2. To set, subject to approval of the Annual Conference, the appropriation necessary to meet such charges.

3. To perform such other acts and discharge such other duties as may be prescribed by the Discipline of the Methodist Church or by action of said Southwest Texas Annual Conference of the Methodist Church.

The law-making body of the Methodist Church is known as the General Conference. The General Conference publishes a book of church law, the Discipline of the Methodist Church, which the General Conference has broad power to amend.

The Board of Pensions administers funds which are used to pay annuities and pensions to retired ministers, the widows of ministers during their widowhood, and dependent children of deceased ministers. At the time of this trial there were about 125 retired ministers and approximately an equal number of widows and dependent children who were qualified for such annuity and pension payments from the Board of Pensions. The size of this body fluctuates as its members die and others qualify, but at any particular time, the members of this body are each identifiable and ascertainable.[1]

1. The trial court made extensive findings of fact, the gist of which is included in the above summary. In addition to the above summarized factual statement, the trial court also found (a) it was the intent of Otto and Norma Raeke to dispose of all their estate by such will and not to die intestate as to any part of their estate and it was the general intent of Otto and Norma by such will to leave the residuary estate to a fund for retired ministers within the Southwest Texas Conference of the Methodist Church; (b) the Board of Pensions of the Southwest Texas Conference of the Methodist Church is the entity that administers funds for retired ministers within the Conference, such Board of Pensions is the proper entity within said Conference to receive and administer a retired ministers' fund for the benefit of such retired ministers, and that the use of such funds for the benefit of such retired ministers by said Board of Pensions is a charitable use; (c) the Board of Pensions is a charitable non-profit corporation organized and existing under the laws of the State of Texas and in accordance with the church law of the Methodist Church; (d) such Board of Pensions is the property entity to be named by the court to receive the residuary estate passing under the will of Otto and Norma Raeke and the Board of Directors of such Board should be named by the court as trustees thereof; (e) the Board of Pensions should receive the said properties from the executor, and said trustees shall serve without bond and shall have all the powers granted trustees under the Texas Trust Act, but said Board shall not spend the corpus of the property of said estate but shall invest the same and shall apply all income and revenue derived from said investment for the benefit of the retired ministers of the Conference in such

We hold that the trial court correctly held that (a) the joint and mutual will of Otto and Norma Raeke created a valid charitable trust; (b) the trust created did not violate the rule against perpetuities; (c) the intent of Otto and Norma Raeke was to leave their residuary estate to a retired ministers' fund within the Southwest Texas Conference of the Methodist Church, and such testamentary gift took effect at the death of the survivor; (d) the doctrine of Cy Pres applied to the facts of this case; (e) all of the residuary estate passed to the Board of Pensions as trustee, which was the proper entity to receive such testamentary gift and administer the same through the Board of Directors of such Board for the benefit of the retired ministers of the Southwest Texas Conference of the Methodist Church.

We will first discuss appellants' point of error that the trial court erred in holding that the trust involved is a charitable trust, since most of appellants' other points of error stand or fall on the determination of this question. Appellants assert that there is no evidence to support such finding, the evidence is factually insufficient, and such finding is against the great weight and preponderance of the evidence. In support of such contention they urge that the will conclusively establishes that the trust it purported to create is not a charitable trust, and in the alternative, if it is a charitable trust, it is a private charitable trust. We disagree.

An oft quoted and landmark case on the question of charitable trusts is the Supreme Court decision in *Boyd v. Frost National Bank,* 145 Tex. 206, 196 S.W.2d 497 (1946). In *Boyd,* the Court held valid as a public charitable trust a will devising all personal property to a trust, the income from which was to be given to such charities as the

manner as is deemed most advisable by the trustees of said Board.

The trial court also filed conclusions of law which may be summarized as follows: (a) the doctrine of Cy Pres is applicable and should be applied to the facts of this case; (b) the Board of Pensions should be named by the court to receive the residuary estate and the Board of

trustee, in his absolute discretion, would select. Petitioner argued, among other things, that the trust was invalid because (a) the language creating such trust was too general, vague, and indefinite; (b) the bequest for charitable purposes would also include gifts for private purposes, would violate the rule against perpetuities, and would be void. The Court held the trust to be valid and said:

'A gift to a charitable institution or society will be presumed to be a charitable gift, though no purpose is named, and such institution or society will be presumed to hold such gifts in trust for those charitable purposes for which it exists.'

The Court quoted with approval from Professor Scott's work on Trusts, Volume 3, Section 396, as follows:

'A testator may devise or bequeath property in trust for charitable purposes without designating the particular purposes to which he wishes the property to be applied. He may leave the property to trustees for such charitable purposes as they may select. Such a disposition is valid according to the great weight of authority. If the trustee is ready and willing to make the selection, there is no reason why he should not be permitted to do so. This is true where the testator designates the general nature of the charitable purposes to which he desires the property to be applied. It is true also where the trustee is left free to devote the property to any charitable purpose he may select.'

The Court also set forth rules of construction pertaining to charitable trusts, stating:

Mrs. Pryor had been careful to state that she was creating a trust for 'charitable purposes in perpetuity.' We are asked to hold that she meant to include in these purposes a class of benevolence which

Directors of such Board should be named by the court as trustees thereof; (c) such Board of Pensions is the proper entity within such Conference to receive and administer the retired ministers' fund for the benefit of such retired ministers within the Conference, and that the use of such funds by such Board is a charitable use.

would admittedly invalidate her will, and to resolve matters of construction against rather than in favor of the will's legality. Such a holding would be clearly contrary to the applicable rules of construction, which are well stated in the following language from *Powers v. First National Bank of Corsicana:* 'If it be conceded that ambiguity exists by reason of the structure of the sentence in question, we believe the same must be resolved in favor of legality. Charities like those specified by Mrs. Hofstetter are held in such high regard by the law that the rules of construction are more liberal to sustain them than they would be if the gifts were to individuals. [Citations omitted.] As said in *Jackson v. Phillips,* supra, 14 Allen, Mass., 539: "When a charitable intent appears on the face of the will, but the terms used are broad enough to allow of the fund being applied either in a lawful or an unlawful manner the gift will be supported, and its application restrained within the bounds of the law." More concretely, if one construction of a will causes it to violate the rule against perpetuities while another makes it comply therewith, the latter construction will be preferred. Page, Law of Wills, vol. 2, sec. 925, p. 842. "Public charities are public blessings, and the commonwealth is interested in giving force and effect to them" [Citation omitted.] So the court's attitude in considering a bequest intended for a charitable purpose should be friendly, not hostile. [Citation omitted.] It should "make every reasonable effort to hold that the trust is purely charitable, and not a mixed charitable and private trust which would be invalid." 2 Bogert, Trusts and Trustees, § 369.' *Powers v. First National Bank of Corsicana,* 138 Tex. 604, 617, 161 S.W.2d 273, 282.

In *Eldridge v. Marshall National Bank,* 527 S.W.2d 222 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.), the trust under attack left certain funds and real estate to form a scholarship fund. Appellant's main contention on appeal was that the trial court erred in holding that the will of Hope Pierce Tartt created a valid public charitable trust. The court upheld the trust and stated that since public charitable trusts are favored by courts of equity, they will be sustained if from the four corners of the will, a purpose can be gathered to establish a trust for a class sufficiently definite to be legally ascertained. Appellant also contended that the will involved was even more vague than the will involved in *Allred v. Beggs,* 125 Tex. 584, 84 S.W.2d 223 (1935), because Mrs. Tartt not only did not specify that the scholarship fund was to be exclusively for charitable purposes, but she also failed to ever use the word charity; in order to validate the scholarship fund provision, the court would have to prohibit the trustee from using the fund for non-charitable and non-public purposes; it would be necessary for the court to designate the portion of the public to benefit from the scholarship fund; and, this would amount to the Court's making a will for the testatrix in violation of the laws of this State. The Court said:

> We disagree. Unlike the will in *Allred,* which created a purely personal trust in the executor, the will in the case at bar limits the executors' use of the estate to a scholarship fund, which is, by definition, a valid charitable use.

In *Boyd v. Frost National Bank,* supra, the Court considered at length the question of what constitutes charitable purpose and quoted with approval the classification found in II Restatement, Trusts, Section 368, p. 1140:

> 'Charitable purposes include
>
> (a) the relief of poverty;
>
> (b) the advancement of education;
>
> (c) the advancement of religion;
>
> (d) the promotion of health;
>
> (e) governmental or municipal purposes;
>
> (f) other purposes the accomplishment of which is beneficial to the community.'

In *Frost National Bank v. Boyd,* 188 S.W.2d 199, 207 (Tex.Civ.App.—San Antonio 1945), aff'd, 145 Tex. 206, 196 S.W.2d 497 (1946), the Court of Civil Appeals stated:

A 'charitable trust' is a 'public trust.' The term 'charitable purposes' means the same thing as 'public charitable purposes.' A 'charity' is a 'public charity.' The distinction between a 'private trust' and a 'charitable trust' is that the rule against perpetuities applies to 'private trust,' but does not apply to 'charitable trust.' A 'charitable trust' must necessarily be public so that it may be said that the greater social good is realized by permitting it to stand, despite the fact that the trust property is diverted from the normal channels of trade and commerce.

See also *Powers v. First National Bank of Corsicana*, 137 S.W.2d 839 (Tex.Civ.App.—Waco 1940, writ ref'd n.r.e.).

We have concluded that the trust sought to be created is a valid public charitable trust.[2] Appellants' second and third points of error are overruled.

■ Appellants' first point of error urges that the trust sought to be created is invalid because it violates the rule against perpetuities.[3] Appellants concede that the rule against perpetuities is not applicable if the trust is exclusively for charitable purposes. We have heretofore held and discussed in considerable detail why we consider the herein trust to be a valid charitable trust, and have quoted from cases holding that a perpetual charitable trust is not in violation of the rule against perpetuities. *Boyd v. Frost National Bank,* supra; *Powers v. First National Bank,* supra. Under our holding, we deem it unnecessary to further discuss appellants' first point of error, and it is overruled.

■ Appellants also complain that the trial court erred in applying the doctrine of Cy Pres. However, appellants' complaint as to the court's use of the Cy Pres doctrine is grounded upon their belief that the trust is not a charitable trust, and state that in Texas the doctrine of Cy Pres is applicable only to charitable trusts. See *General As-*

*sociation of Davidian Seventh Day Adventist, Inc. v. General Association of Davidian Seventh Day Adventists,* 410 S.W.2d 256 (Tex.Civ.App.—Waco 1966, writ ref'd n.r. e.); Note, Texas Enacts Cy Pres Statute, 49 Texas L.Rev. 181 (1970). We have heretofore held that the trust here created is a valid charitable trust. It is also our opinion that the doctrine of Cy Pres was properly applied to the facts of this case. Moreover, it is a general rule of equity that a trust will not fail for lack of a trustee, and if a trustee be named and refuses to act, or the instrument attempting to create a trust fails to name a trustee, the courts will appoint a trustee to carry out the manifest intent of the settlor. *Wilson v. Franz,* 359 S.W.2d 630 (Tex.Civ.App.—El Paso 1962, writ ref'd); *Taysum v. El Paso National Bank,* 256 S.W.2d 172 (Tex.Civ.App.—El Paso 1952, writ ref'd); II Restatement of the Law, Trusts, Sec. 397, p. 286.

All of appellants' points of error have been considered and all are overruled. The judgment of the trial court is affirmed.

---

**2.** Professor Bogert, in his work on Trusts and Trustees, states that the words, 'charitable' and 'public' are synonymous insofar as they pertain to the law of charitable trusts. 2 Bogert, Trust & Trustees, § 362, p. 1099.

**3.** Perpetuities and monopolies are contrary to the genius of a free government and shall never be allowed. Texas Constitution, Article 1, § 26.