# NO. 12-08-00232-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE ESTATE OF* | § | *APPEAL FROM THE* |
| *J.W. TYNER,* | § | *COUNTY COURT AT LAW #3* |
| *DECEASED* | § | *SMITH COUNTY, TEXAS* |

### *OPINION*

Lacey Westbrook appeals from an adverse summary judgment rendered in the declaratory judgment action she initiated to have J.W. Tyner's will construed. Westbrook contends the trial court erroneously determined that she is not a beneficiary under the will, set the wrong postjudgment interest rate, erred in awarding attorney's fees without trial, and failed to hold hearings or rule on several of her motions. We modify the judgment to reflect the correct postjudgment interest rate and to delete the award of attorney's fees for postjudgment collection and affirm as modified.

### BACKGROUND

Westbrook is the biological daughter of J.W. Tyner's adopted son, Gordon. Gordon died on November 13, 2002. Less than two weeks later, on November 25, 2002, J.W. executed his will, leaving the bulk of his estate to his wife, Hallye. J.W. died March 27, 2006, and his will was admitted to probate.

Westbrook filed a petition for declaratory judgment asking the court to construe J.W.'s will and determine that she is a descendant as the term is used in the will and entitled to take under the will. Appellees Hallye Tyner, Zoe Anna Tyner, and Mitzi Tyner Parks filed a motion for summary

judgment arguing that the unambiguous will excludes Westbrook or, if the will is ambiguous, extraneous evidence establishes that the will excludes Westbrook. Alternatively, they argued, Westbrook released this claim in a compromise settlement agreement signed in 2005.

Westbrook also moved for summary judgment, asserting the right to judgment as a matter of law because the will, she argues, unambiguously includes her as a descendant entitled to take under the will. The trial court determined that the will is not ambiguous and that it limits J.W.'s children to Zoe Anna Tyner and Mitzi Tyner Parks; limits J.W.'s descendants to the descendants of Zoe Anna Tyner and Mitzi Tyner Parks; and excludes Westbrook from being a descendant and beneficiary under the will. The court awarded Appellees their attorney's fees and ordered Westbrook to pay postjudgment interest at the rate of 7.25%.

## STANDARD OF REVIEW

The purpose of a declaratory judgment is to obtain a clarification of one's rights. *J.E.M. v. Fidelity & Cas. Co. of New York*, 928 S.W.2d 668, 671 (Tex. App.–Houston [1st Dist.] 1996, no writ). We review a declaratory judgment under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2008). We review the trial court's summary judgment de novo. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).

## CONSTRUING THE WILL

In her first issue, Westbrook asserts that the two sections of the will defining "descendants," when construed together, unambiguously indicate J.W.'s intention that she inherit under the will. She argues that J.W. described some descendants in Article I and then described additional descendants, that is, descendants of adopted children, including herself, in Article XI. She also

2

asserts that J.W. is the "ancestor designated" and the "adopting parent" referenced in Article XI, paragraph C. She further argues that she, the daughter of Gordon, the adopted son, is the "lineal blood descendant" of J.W. and therefore eligible to inherit under the will. Because Westbrook's interpretation is inconsistent with the context, we disagree.

**Applicable Law**

Our primary inquiry in interpreting a will is to determine the intent of the testator. ***Gee v. Read***, 606 S.W.2d 677, 680 (Tex. 1980). In doing so, the language of a single clause will not govern, but must be read in the context of the entire instrument. ***Eldridge v. Marshall Nat'l Bank***, 527 S.W.2d 222, 226 (Tex. App.–Houston [14th Dist.] 1975, writ ref'd n.r.e.). Every clause and paragraph should be given a construction that makes it consistent with the document as a whole. ***Bloodworth v. Bloodworth***, 467 S.W.2d 218, 220 (Tex. App.–Eastland 1971, writ ref'd n.r.e.). Further, we determine the testator's intent from the language used within the four corners of the instrument. ***San Antonio Area Found. v. Lang***, 35 S.W.3d 636, 639 (Tex. 2000). If the will is unambiguous, courts should not go beyond its specific terms in search of the testator's intent. ***Id.*** Accordingly, in the absence of ambiguity, extrinsic evidence may not be introduced to show that the testator intended something outside of the words used. ***Id.***

**Discussion**

In Article I, paragraph B, J.W. identified his children.

> **Children.** I have two children, ZOE ANNA TYNER and MITZI TYNER PARKS. All references in this Will to "my children" are to ZOE ANNA TYNER and MITZI TYNER PARKS. All references to "my descendants" shall be to my children (as defined above) and their descendants.

In Article XI, paragraph C, J.W. further addressed the meaning of the term "descendant."

> **Descendants.** References to "descendant" or "descendants" mean, in addition to any definition set forth in Article I, lineal blood descendants of the first, second or any other degree of the ancestor designated; provided, however, such references shall include, with respect to any provision of this Will, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, an adopted child and such adopted child's lineal descendants by blood or adoption

3

shall be considered under my Will as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of the adopting parent or of either of the adopting parents.

Article I of the will specifically identifies J.W.'s children and does not include Gordon, who had predeceased J.W. Therefore, the term "descendants," as used in Article I, cannot refer to Gordon's descendants. Article XI begins by stating that references to "descendants" mean lineal blood descendants of the "ancestor designated." Throughout the will, J.W. spoke in the first person, referring to himself as "I." It is unlikely that he would suddenly refer to himself as the "ancestor designated." In Article XI, paragraph C, he uses the phrases "my Will" and "adopting parent" in the same sentence. Again, it is illogical to interpret this to mean that J.W. is referring to himself as the "adopting parent."

Further, Article XI refers specifically to Article I, indicating that the explanation of the term "descendant" is a continuation of the explanation that began in Article I. Construing the two paragraphs together, the term "descendant" in Article XI means first, descendants of the ancestor designated, that is, the ancestor specifically named in Article I, and second, adopted children of the adopting parents, those potential adopting parents having been specifically named in Article I.

Considering the four corners of the will, we conclude that J.W. intended to limit the term "descendants" to mean only children and adopted children of Zoe Anna Tyner and Mitzi Tyner Parks. The will cannot properly be interpreted in a manner including Westbrook as a descendant. *See **Bloodworth***, 467 S.W.2d at 220. Accordingly, the trial court correctly determined that Westbrook is not a descendant and beneficiary under J.W.'s will. We overrule Westbrook's first issue.

### INTEREST RATE

In her second issue, Westbrook asserts that the trial court incorrectly set the postjudgment interest rate at 7.5% when the correct postjudgment interest rate at the time was 6.00%. Appellees concede that the correct interest rate is 6.00%.

Section 304.003(c) of the Texas Finance Code provides that the postjudgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date

of computation." TEX. FIN. CODE ANN. § 304.003(c) (Vernon 2006). The Federal Reserve Board prime rate on March 12, 2008, the date of the judgment in this case, was 6.00%. *See* http://www.federalreserve.gov/releases/h15/data/Business_day/H15_PRIME_NA.txt. We have the authority to modify incorrect judgments when the necessary information is available for us to do so. *See* TEX. R. APP. P. 43.2(b); ***Mullins v. Mullins***, 202 S.W.3d 869, 878 (Tex. App.–Dallas 2006, pet. denied). We therefore modify the judgment to reflect the correct percentage. *See **Dees v. State***, 822 S.W.2d 703, 707 (Tex. App. -- Dallas 1991), *aff'd*, 865 S.W.2d 461 (Tex. Crim. App. 1993). We sustain Westbrook's second issue.

## ATTORNEY'S FEES

In her third issue, Westbrook contends the trial court erred by awarding attorney's fees to Appellees without first having a hearing on the issue. She argues that, in light of her objection to Appellees' evidence of attorney's fees and her demand for a jury trial, the amount of attorney's fees was a fact question for the jury. She further contends that Appellees' affidavit for attorney's fees was "factually insufficient" because the affidavit did not list any facts on which the court could base an award of $5,000.00 for postjudgment collection. Finally, she asserts that the award for collection is moot because she posted cash to supersede the judgment.

In their motion for summary judgment, Appellees asked the court to order Westbrook to pay their attorney's fees but offered no evidence on fees at the time. The court signed an order granting Appellees' motion but specifically stated in the order that it is interlocutory "because it does not determine the amount of attorney's fees that should be awarded to [Appellees.]" The following month, Appellees filed a motion for attorney's fees supported by an affidavit of their attorney in which he asserted that the reasonable, necessary, and customary fees for legal services in this action total $53,795.00.

Thereafter, Westbrook filed a motion for attorney's fees "pursuant to the Summary Judgment that the Court should have granted." The motion was supported by her attorney's affidavit, setting out the amount of fees she requested. In the same motion, Westbrook objected to the fees requested by Appellees and the affidavit filed on their behalf. The trial court's final judgment granted both Appellees' motion for summary judgment and their motion for attorney's fees. The court ordered

5

Westbrook to pay Appellees up to $53,795.00, depending on the extent of postjudgment appellate activity.

When a movant includes a prayer for attorney's fees in the summary judgment motion, an affidavit constituting expert opinion testimony can sufficiently establish reasonable attorney's fees. ***Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.***, 821 S.W.2d 283, 288 (Tex. App.Houston [1st Dist.] 1991, writ denied). To create a fact issue, the nonmovant's attorney must file an affidavit contesting the reasonableness of the movant's attorney's fee affidavit. ***Id***. To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. TEX. R. CIV. P.166a(f). The allegations must be direct, unequivocal, and such that perjury is assignable. ***AU Pharmaceutical, Inc. v. Boston***, 986 S.W.2d 331, 338 (Tex. App.–Texarkana 1999, no pet.). Thus, an affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted. ***Basin Credit Consultants, Inc. v. Obregon***, 2 S.W.3d 372, 373 (Tex. App.–San Antonio 1999, pet. denied).

Appellees' attorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney's fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to Appellees in this matter, and those services were reasonable, necessary, and customary. Thus, Appellees' attorney's affidavit sufficiently established reasonable attorney's fees and is legally sufficient to support the trial court's award of attorney's fees. *See **Columbia Rio Grande Reg'l Hosp. v. Stover***, 17 S.W.3d 387, 397 (Tex. App.–Corpus Christi 2000, no pet.); ***Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.***, 747 S.W.2d 464, 468-69 (Tex. App.–San Antonio 1988, no writ).

The burden then shifted to Westbrook to provide controverting evidence raising an issue of fact as to the amount of attorney's fees she should have to pay. ***Owen Elec. Supply, Inc.***, 821 S.W.2d at 288. Westbrook's evidence addressed only her own request for attorney's fees. While Westbrook objected to Appellees' requested attorney's fees and their evidence, she did not produce evidence regarding the reasonableness of those requested fees. Accordingly, Westbrook did not raise a fact question triggering the need for an evidentiary hearing before a fact finder.

6

Westbrook, however, raises an error regarding a specific award. She asserts that the award of $5,000.00 for postjudgment collection is moot because she posted cash to supersede the judgment. Appellees agree, contending that this is not a proper subject for this court's adjudication. The record includes an agreed motion to fix the amount of security for supersedeas, but no order. However, since the parties agree that Appellees are not entitled to an award for postjudgment collection, we will accept this fact as true. *See* TEX. R. APP. P. 38.1(f). Accordingly, because the trial court did not err in failing to hold a hearing on the issue of attorney's fees, we overrule Westbrook's third issue to the extent of that complaint. We modify the trial court's judgment to reflect that Appellees are not entitled to an award for postjudgment collection.

## MOTIONS

In her fourth issue, Westbrook asserts the trial court erred in failing to hold hearings or rule on her motion to compel discovery, motion to strike evidence, motion for continuance, supplemental motion for continuance, and special exceptions to Appellees' motion for summary judgment. The four motions all relate to Westbrook's requests for discovery. Because the summary judgment was properly decided, any controversy regarding these motions ceased to exist. Therefore, the issue is moot as to these motions. *See **Williams v. Lara***, 52 S.W.3d 171, 184 (Tex. 2001).

Westbrook filed special exceptions to Appellees' motion for summary judgment asserting that the motion does not clearly state the grounds on which summary judgment is sought. She also excepted to certain paragraphs because they refer to extrinsic evidence, controverted evidence, hearsay, and factual and legal conclusions. She did not specifically identify the evidence or conclusions to which she referred. She did not, in that document, ask the court to set a hearing on her special exceptions. On the same day that she filed her special exceptions, she filed a motion for continuance asking the court to reset the submission date so that she had adequate notice and time to complete discovery.

Three months later, the trial court signed an interlocutory summary judgment in favor of Appellees without addressing the special exceptions. The trial court did not sign an order specifically addressing Westbrook's special exceptions. However, the final judgment includes the statement that all relief not expressly granted is denied. Special exceptions that are not called to the

7

trial court's attention and on which the record does not show that the trial court acted are waived. **R.I.O. Sys., Inc. v. Union Carbide Corp.**, 780 S.W.2d 489, 491 (Tex. App.–Corpus Christi 1989, writ denied). Westbrook had the burden to obtain a hearing to present her special exceptions to the trial court and obtain a ruling on them before it ruled on the summary judgment that was the subject of the special exceptions. Her failure to do so resulted in waiver of her complaint. Furthermore, due to a lack of specificity, her special exceptions fall short of the standard mandated by Texas Rule of Civil Procedure 91. That rule requires the party filing a special exception to point out the particular pleading excepted to and to point out intelligibly and with particularity the defect or insufficiency in the allegations in the pleading excepted to. TEX. R. CIV. P. 91; **Castano v. San Felipe Agric., Mfg., & Irrigation Co.**, 147 S.W.3d 444, 453 (Tex. App.–San Antonio 2004, no pet.). We overrule Westbrook's fourth issue.

## CONCLUSION

In his unambiguous will, J.W. Tyner limited the term "descendants" in a manner that excludes Westbrook. Therefore, the trial court correctly determined that Westbrook is not a descendant and beneficiary under J.W. Tyner's will. We ***modify*** the judgment to reflect that Westbrook is to pay postjudgment interest at the rate of 6.00% and to delete the $5,000.00 award of attorney's fees for enforcing and collecting the judgment.

As ***modified***, we ***affirm*** the trial court's judgment.

    BRIAN HOYLE    
Justice

Opinion delivered June 10, 2009.
*Panel consisted of Worthen, C.J., Hoyle, J., Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(PUBLISH)

8