

# NUMBER 13-16-00357-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LETY ROBINSON, INDIVIDUALLY
AND D/B/A KISS'L FLOWERS
SHOP, LLC,                                                    Appellant,

v.

CARLOS OCHOA, ROSALINDA R.
OCHOA AND LORENA OCHOA,                          Appellees.

On appeal from the County Court at Law No. 2
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Rodriguez, Contreras, and Hinojosa
Memorandum Opinion by Justice Hinojosa

Appellant Lety Robinson, individually and d/b/a Kiss'l Flowers Shop, LLC

(Robinson) appeals from a judgment, following a bench trial, entered in favor of appellees

Carlos Ochoa, Rosalinda R. Ochoa, and Lorena Ochoa. By thirteen issues, which we

treat as six, Robinson argues that: the evidence is legally and factually insufficient to support (1) liability, (2) damages, and (3) attorney's fees; (4) Rosalinda and Carlos lack capacity to bring suit; (5) the trial court abused its discretion by denying Robinson's oral motion for continuance; and (6) the judgment improperly awards travel expenses and contains the wrong post-judgment interest rate. We affirm as modified.

## I. BACKGROUND

Carlos and Rosalinda contracted with Robinson to provide catering, decorations, and other services for their daughter Lorena's wedding. Appellees believed that Robinson did not deliver as promised, and they later sued Robinson for breach of contract, fraud, conversion, promissory estoppel, money had and received, and violations of the Texas Deceptive Trade Practices Act (DTPA). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West, Westlaw through 2017 1st C.S.).

Lorena was appellees' sole witness at trial. She testified that her mother Rosalinda originally contacted Robinson to coordinate her wedding, which was to be held in Brownsville, Texas, where most of appellees' extended family resided. Rosalinda travelled from her home in Memphis, Tennessee to visit with Robinson a month before the wedding and ultimately agreed to retain her as the wedding coordinator. Lorena, who resided in Lubbock, Texas, participated in the planning of the wedding by phone and later met Robinson in person the week before the wedding.

### A. Agreement for Wedding Services

A month before the wedding, Rosalinda agreed to pay Robinson $25,900.[1] In

---

[1] Lorena testified without objection regarding the parties' respective obligations. An initial invoice was also admitted into evidence. However, it is written in Spanish and its contents were not translated.

return, Robinson was to provide the following: bouquets for the bride, maid of honor, and two bridesmaids; ten boutonnieres; natural floral decorations for each pew in the church; further natural floral decorations for the church and reception venue; table settings and catering for fifty-two tables and 412 guests; twenty-five waiters; a wedding cake with floral decorations; photographs and video of the wedding and reception; a photograph area for guests at the reception; two lounge areas; and lighting for both the wedding and reception.

Rosalinda paid an initial deposit of $2,600. The week before the wedding, Lorena met with Robinson in person, and Robinson provided a demonstration of the table settings, flower arrangements, and church and reception decorations. Robinson also showed Lorena examples of the lighting that she intended to provide for the wedding. According to Lorena, the lighting was an important consideration because it was "supposed to transform the venue" and "make it seem a little bit more cozier."

## B. Issues with Payment

On the day of the wedding, Robinson provided an invoice in the amount of $30,171.44. Appellees did not object to the increased price and paid the total amount by check. Robinson, however, was concerned that the check was not covered by sufficient funds. Therefore, she demanded that appellees provide a cash payment. Carlos paid Robinson $23,000 in cash. Following the wedding, Robinson deposited appellees' check, and the check cleared, resulting in an excess payment in the amount of $25,600, representing the cash payment and the initial $2,600 deposit. After suit was

Robinson did not dispute the terms of the contract at trial and raises no evidentiary issues on appeal.

3

filed, but before trial, Robinson returned the excess payment to appellees. At trial, appellees sought no damages as a result of Robinson's holding of the excess funds.

## C.     Services Provided by Robinson

Lorena testified concerning the goods and services Robinson failed to provide. For instance, Robinson did not provide bridal or bridesmaids bouquets. As a result, Lorena was forced to use her maid of honor's bouquet for the wedding, and her bridesmaids resorted to taking flowers from the pews to use as bouquets. Robinson provided only three of the ten boutonnieres. Approximately half of the flowers used for decorations were artificial, and only the first two pews of the church were decorated with flowers. There were no decorations for the "backdrop" at the wedding reception. The lighting at the reception was not as elaborate as what Robinson demonstrated before the wedding. Rather, it was very "limited," and most of the lighting at the reception was provided by the disc jockey retained separately by appellees. Lorena also stated that the cake did not have any floral decorations. Further, the table settings at the reception were incomplete: "Some didn't have any silverware, only some had water glasses." Robinson did not furnish any plates or forks to serve the wedding cake. Only one lounge area was provided, rather than two, and there was no area for reception guests to have their picture taken. Seven waiters were provided for the approximately 400 guests. Robinson did not provide appellees with photographs or video of the wedding. After suit was filed, appellees ultimately paid an additional $900 to the photographer to release the photographs and video. Lorena estimated that the monetary difference between what Robinson promised and what she delivered was between $10,000 and $15,000.

4

**D.     Robinson's Testimony**

Robinson acknowledged that her services for the wedding were not perfect, but she did a great job by her own estimation.   Robinson claimed appellees never informed her of their dissatisfaction until after the wedding.

**E.     Trial Court's Judgment**

After the close of evidence, the trial court announced the following:

> After listening to the testimony yesterday and hearing counsel and Ms. Robinson, I reviewed the contract and I took everything into consideration, it's my ruling that [appellees] should be awarded $15,000.   I found that the—what they had agreed upon was not—let me look through my notes. What they got was not delivered.   The lighting, the flower arrangements, the bouquet or lack of bouquet, the photos that they had to pay another $900 for, the lounge area that was not what they requested or agreed upon, the food, the waiters, the lack of plates and the napkins for the wedding cake, that's why I made that ruling in the amount of $15,000.

In its written judgment, the trial court awarded appellees:   $15,000 in damages; $2,500 for travel expenses; $15,000 for attorney's fees; and 8.25% in post-judgment interest. The trial court also awarded conditional appellate attorney fees of $3,000 for an appeal to this Court and $3,000 for an appeal to the Texas Supreme Court.   Robinson filed a motion for new trial, which the trial court denied.   Neither party requested findings of fact or conclusions of law.   This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

By her first three issues, Robinson challenges the legal and factual sufficiency of the evidence supporting each of appellees' claims.

5

**A. Standard of Review**

In a bench trial in which no findings of fact or conclusions of law are requested by the parties or filed by the trial court, we imply all findings of fact necessary to support the judgment. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* We review the sufficiency of the evidence supporting the findings by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see also Uribe v. Pharia, LLC*, No. 13-13-00551-CV, 2014 WL 3555529, at *4 (Tex. App.—Corpus Christi July 17, 2014) (mem. op.). The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.*

When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Fulgham*, 349 S.W.3d at 157.

## B.    Breach of Contract

We first address Robinson's challenge to appellees' breach of contract claim. Robinson argues that the parties' agreement was not sufficiently definite and is therefore unenforceable. Robinson further argues there was insufficient evidence that she breached the contract.

### 1.    Applicable Law

To recover for breach of contract, a plaintiff must show: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the terms of the contract; and (4) the plaintiff suffered damages as a result of the defendant's breach. *Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.); *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *McLaughlin, Inc. v. Northstar Drilling Tech., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.).

Parties form a binding contract when the following elements are present:   (1) an

7

offer, (2) an acceptance in strict compliance with the terms of an offer, (3) a meeting of the minds, (4) a communication that each party consented to the terms of the contract, and (5) consideration. *See Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied); *Expro Ams., LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

### 2. The Contract Was Enforceable

Robinson challenges the first element of a breach of contract claim—the existence of a valid contract. Robinson does not dispute Lorena's testimony concerning the terms of the contract. Rather, she argues that the terms are "too indefinite to be enforced." We disagree.

While Robinson frames this argument as a sufficiency challenge, the determination of whether a contract is enforceable requires us to construe its terms. This is a legal issue, which we review de novo. *See Chavez v. McNeely*, 287 S.W.3d 840, 844 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). However, a contract need only be definite and certain as to those terms that are "material and essential" to the parties' agreement. *Fischer v. CTMI, LLC*, 479 S.W.3d 231, 237 (Tex. 2016). When a contract is as definite and certain as the parties could have made it under the circumstances and it is sufficiently definite and certain to furnish a basis for arriving with reasonable certainty at the minimum damages, the contract is enforceable. *Id.* at 241.

8

Lorena testified regarding the material terms of the parties' agreement. Appellees were required to pay Robinson $30,171.44. In return, Robinson agreed to furnish specified goods and services for Lorena's wedding ceremony and reception at a specific date and time. As set out above, Robinson's obligations included providing, among other things, bouquets and floral decorations, table settings and catering for the reception guests, twenty-five waiters, a decorated wedding cake, photographs and video, a photograph area for guests, two lounge areas, and specific lighting for the wedding. We conclude that the terms of the contract were sufficiently certain to enable the trial court to determine the rights and responsibilities of the parties. *See id.*; *see also Clear Creek Indep. Sch. Dist. v. Cotton Commercial USA, Inc.*, 529 S.W.3d 569, 585 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (concluding that agreement which outlined the parties, subject matter, and basic obligations met the low threshold that an agreement for services "states all essential terms"). We also observe that "[p]art performance under an agreement may remove uncertainty and establish that an enforceable contract has been formed." *Fischer*, 479 S.W.3d at 240 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 34(2)). Therefore, Robinson's partial performance under the agreement establishes that the parties agreed on the essential terms to the contract. *See id.*

### 3. There Was Sufficient Evidence Establishing Robinson's Breach

Next, Robinson argues that there was legally and factually insufficient evidence that Robinson breached the agreement because appellees presented no evidence "comparing terms and actual performance." Robinson maintains that Lorena's testimony concerning Robinson's performance under the agreement "never went beyond the

9

conclusory stage." We disagree with Robinson's characterization of the evidence.

"A breach occurs when a party fails or refuses to do something he has promised to do." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Lorena testified concerning the specific promises upon which Robinson failed to deliver: no bridal or bridesmaids bouquet; only three of the ten boutonnieres were provided; half of the floral decorations were artificial; missing decorations for several pews and the wedding backdrop; limited lighting; no floral decorations on the wedding cake; incomplete table settings; only seven of the expected twenty-five waiters were provided; one lounge area instead of two; no photograph area for guests; and no photographs or video. Viewing the evidence in the light most favorable to the trial court's implied findings, we conclude that the evidence "would enable reasonable and fair-minded people" to find that Robinson breached the agreement. *See City of Keller*, 168 S.W.3d at 827. Furthermore, considering all the evidence supporting and contradicting the finding, we conclude the trial court's implied finding is not so contrary to the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176.

### 4. Summary

We hold that the contract was sufficiently definite and enforceable. We further hold that appellees' breach of contract action is supported by legally and factually sufficient evidence. Given our resolution of these issues, we need not address Robinson's claims concerning appellees' remaining causes of action. *See* TEX. R. APP. P. 47.1; *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 870 (Tex. App.—Dallas 2008, no

10

pet.) (explaining that in cases where the judgment rests on multiple theories of recovery, an appellate court need not address all causes of action if any one theory is valid). We overrule Robinson's first issue.

## C. Damages

By her second issue, Robinson argues that the evidence was legally and factually insufficient to establish damages.

### 1. Applicable Law

Generally, the measure of damages for breach of contract is the benefit-of-the-bargain measure, which seeks to restore the injured party to the economic position it would have enjoyed if the contract had been performed. *See Abraxas Petrol. Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App.—El Paso 2000, no pet.). Stated another way, this measure of damages is the difference between the value represented and the value actually received. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *Walker & Assocs. Surveying, Inc. v. Austin*, 301 S.W.3d 909, 919 (Tex. App.—Texarkana 2009, no pet.).

The trier of fact has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Holland v. Lovelace*, 352 S.W.3d 777, 792 (Tex. App.—Dallas 2011, no pet.). We will not disregard a trial court's findings merely because its reasoning in arriving at its figures may be unclear. *Id.* The fact that there is nothing in the record to show how a fact-finder arrived at a specific amount does not render its calculation erroneous. *Id.* Instead, when the evidence supports a range of awards, an award of damages within that range

11

may be an appropriate exercise of the fact-finder's discretion. *Id.* We further note that "[a] party who breaks his contract cannot escape liability merely because it is impossible to state or prove a perfect measure of damages." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 279–80 (Tex. 2015) (quoting *Sw. Battery Corp. v. Owen*, 131 Tex. 423, 428, 115 S.W.2d 1097, 1099 (1938)). We distinguish between uncertainty as to the fact of damages, which may preclude recovery, and uncertainty as to the amount of damages, which will not defeat recovery. *Id.* When the fact of damages is clear, the plaintiffs are required to prove their damages with "reasonable certainty." *Qaddura v. Indo–European Foods, Inc.*, 141 S.W.3d 882, 890 (Tex. App.—Dallas 2004, pet. denied) (citing *Bildon Farms, Inc. v. Ward Cty. Water Improvement Dist. No. 2*, 415 S.W.2d 890, 897 (Tex. 1967)).

### 2. Analysis

Robinson argues that appellees' evidence regarding damages is conclusory, there was no evidence of the value of the goods and services received, and appellees were required to present expert testimony to prove damages.

Lorena estimated that the value of the goods and services Robinson failed to deliver was between $10,000 and $15,000. Lorena's testimony in this regard was supported by underlying facts. *See Riner v. Neumann*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.) (explaining that evidence is not conclusory if it is supported by underlying facts). Robinson received total payment of $30,171.44 from appellees, thus establishing the value of the goods and services to be rendered under the contract. *Cf. Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.)

12

(explaining that an "objective valuation of services, such as a bill, receipt or . . . an estimate, is evidence from which a jury can infer reasonable cost of repair"). The extent of the goods and services that Robinson failed to deliver was quantified by Lorena's testimony as detailed above. *See supra* § II.B.3. This evidence provided the trial court with a range of evidence from which it could exercise its broad discretion in determining the amount of damages. *See Holland*, 352 S.W.3d at 792; *see also Bildon Farms, Inc.*, 415 S.W.2d at 897 (explaining that damages need be proved only to a reasonable certainty, not to a mathematical exactness). Comparing the quantity and quality of goods and services promised with those delivered, we cannot conclude that the trial court's damage award was without a rational basis. *See Holland*, 352 S.W.3d at 792.

We also reject Robinson's contention that appellees were required to present expert testimony to establish damages. Relying on *Mack Trucks, Inc. v. Tamez*, Robinson argues that appellees were required to present the expert testimony of a wedding planner to establish the value of the services Robinson failed to provide. 206 S.W.3d 572 (Tex. 2006). In *Tamez*, the court discussed whether expert testimony was required to establish causation in a suit where an overturned tractor and trailer erupted in flames. *Id.* at 575, 582. The court explained that "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding." *Id.* at 582. It noted that a lay juror's general experience and common knowledge would not extend to causation issues regarding design defects causing the release of diesel fuel. *Id.* Therefore, the court concluded that "[i]ssues regarding the fire's cause(s)" required expert testimony. *Id.*

13

*Tamez* is inapposite. The trial court in this case was not presented with a technical question on causation requiring the testimony of an expert. Further, a plaintiff in a breach of contract action may prove benefit-of-the-bargain damages through lay testimony. *See Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.*, 259 S.W.3d 816, 827–28 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (concluding that lay testimony constituted legally sufficient evidence of damages resulting from breach of contract).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the evidence "would enable reasonable and fair-minded people" to find that appellees suffered damages in the amount of $15,000. *See City of Keller*, 168 S.W.3d at 827. Furthermore, considering all the evidence supporting and contradicting the finding, we conclude the trial court's finding in this regard is not so contrary to the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We overrule Robinson's second issue.

**D.    Attorney's Fees**

By her third issue, Robinson argues that the evidence supporting the trial court's award of attorney's fees is legally insufficient. Appellees respond that Robinson did not preserve this complaint for appeal because she failed to raise the issue in her motion for new trial. But in a civil case tried without a jury, a complaint regarding the sufficiency of the evidence "may be made for the first time on appeal[.]" Tex. R. App. P. 33.1(d); *see Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("It is well settled that challenges to the sufficiency of the evidence in nonjury cases may be raised for the first time on appeal."). "An argument that there was no evidence during

14

a bench trial that attorney's fees were reasonable is a sufficiency-of-the-evidence complaint that may be raised for the first time on appeal." *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Robinson was not required to present her challenge regarding attorney's fees to the trial court. Therefore, we will address her contention below.

## 1. Applicable Law

Texas law does not allow recovery of attorney's fees unless authorized by statute or contract. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002); *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). Section 38.001 of the civil practices and remedies code allows for the recovery of reasonable attorney's fees "in addition to the amount of a valid claim and costs, if the claim is for" the breach of "an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West, Westlaw through 2017 1st C.S.). As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). If attorney's fees are proper under Section 38.001(8), a trial court has no discretion to deny them. *Id.* Ordinarily, the reasonableness of such fees is a question of fact for the fact-finder, and a reviewing court may not substitute its judgment for that of the fact-finder. *Id.*

## 2. Analysis

The testimony of appellees' counsel concerning attorney's fees was as follows:

I've been an attorney for 28 years and I work in Cameron and Hidalgo County. I am also licensed in federal court. I charge $200 per hour. I've worked on this case since the day right after the wedding, October 9 or 10

15

of 2012. And I have my time sheets[2] from the time that I moved to my new office, not from the very beginning but from the time I moved to my new office to the present. I have literally $39,000 in attorney's fees. I'm not asking the Court to award that, that's a lot of money, it's—and a lot of it has to do with the inconvenience of the different attorneys, which I believe to some degree [Robinson] is responsible for having the delay in the process, but I'm asking the Court to award me, instead of the $39,000—and this is my time sheets in this case—somewhere between [$]15 and [$]20 [thousand], whatever the Court feels is fair.

Robinson argues that appellees failed to present any evidence that the requested fees were reasonable. Specifically, Robinson maintains that appellees failed to present evidence concerning any of the *Arthur Andersen* factors.[3] However, in an action tried to the bench under section 38.001, a trial court "may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further

---

[2] Appellees did not introduce the referenced time sheets into evidence.

[3] In *Arthur Andersen & Company v. Perry Equipment Corporation*, the Texas Supreme Court discussed "[f]actors that a factfinder should consider when determining the reasonableness of a fee," including:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04).

16

evidence . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (West, Westlaw through 2017 1st. C.S.); *see Palomin v. Zarsky Lumber Co.*, 26 S.W.3d 690, 696 (Tex. App.—Corpus Christi 2000, pet. denied). We presume that the trial court did take such judicial notice. *See McMahon v. Zimmerman*, 433 S.W.3d 680, 692 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Alford v. Johnston*, 224 S.W.3d 291, 300 (Tex. App.—El Paso 2005, pet. denied). Further, there exists a statutory presumption that such "usual and customary attorney's fees" are reasonable. TEX. CIV. PRAC. & REM. CODE ANN. § 38.003 (West, Westlaw through 2017 1st C.S.). Accordingly, a trial court's judicial notice of the usual and customary attorney's fees under section 38.004 constitutes some evidence on which the trial court can base its award. *See Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) ("The trial court's own proceedings together with the fact that it may take judicial notice of usual and customary fees constitute some evidence to support the award of appellate attorney's fees."); *Kendrick v. Seibert*, 439 S.W.3d 408, 411–12 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Holsworth v. Czeschin*, 632 S.W.2d 643, 645 (Tex. App.—Corpus Christi 1982, no writ). We conclude that the evidence is legally sufficient to support the trial court's award of attorney's fees. We overrule Robinson's third issue.

### III.   CAPACITY

By her fourth issue, Robinson argues that Rosalinda and Carlos cannot recover on the breach of contract claim because they were neither parties nor third-party beneficiaries to the contract.[4]

---

[4] Robinson also argues that Carlos "cannot recover" on appellees' fraud and DTPA actions. Because we have affirmed the trial court's judgment on the basis of appellees' breach of contract claim, we

17

In order to maintain a breach of contract action, a plaintiff must show either third-party beneficiary status or privity. *John C. Flood of DC, Inc. v. SuperMedia, LLC.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied). A challenge to a party's entitlement to sue on a contract is a challenge to the party's capacity to bring suit. *See Highland Credit Opportunities CDO, LP v. UBS AG*, 451 S.W.3d 508, 515–16 (Tex. App.—Dallas 2014, no pet.); *Heartland Holdings Inc. v. U.S. Tr. Co. of Tex.*, 316 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("While the question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits."); *see also Gagan v. Murphy*, No. 13–13–00284–CV, 2014 WL 4402212, at *2 n.2 (Tex. App.—Corpus Christi Aug. 29, 2014, no pet.) (mem. op.). Unlike standing, which is jurisdictional, a challenge to a party's capacity can be waived. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996); *Highland Credit Opportunities*, 451 S.W.3d at 516. Texas Rule of Civil Procedure 93(1) requires a party to file a verified pleading if it argues that "the plaintiff has not legal capacity to sue . . . ." TEX. R. CIV. P. 93(1). Robinson failed to challenge the capacity of Rosalinda and Carlos by a verified pleading. Therefore, she has waived her argument. *See id.*; *Nootsie*, 925 S.W.2d at 662. We overrule Robinson's fourth issue.

---

need not address this argument. *See* TEX. R. APP. P. 47.1.

## IV.     MOTION FOR CONTINUANCE

By her fifth issue, Robinson argues that the trial court abused its discretion by denying her motion for continuance.   Robinson, who appeared at trial pro se, argues that the trial court should have granted her oral motion for continuance so that she would have time to find an attorney.

### A.     Standard of Review and Applicable Law

A continuance may not be granted except for "sufficient cause" supported by affidavit, or the consent of the parties, or by operation of law.   TEX. R. CIV. P. 251.   The decision whether to grant a motion for continuance rests within the discretion of the trial court.   *Crooks v. Moses*, 138 S.W.3d 629, 634 (Tex. App.—Dallas 2004, no pet.).   We will not reverse a trial court's order denying a motion for continuance absent that court's clear abuse of discretion.   *Marchand*, 83 S.W.3d at 800.   The test for determining whether a trial court abuses its discretion is whether it acts unreasonably or in an arbitrary manner without reference to any guiding rules or principles.   *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).   "Generally, when movants fail to comply with [the] requirement that the motion for continuance be 'supported by affidavit,' we presume that the trial court did not abuse its discretion in denying the motion."   *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).   Further, "[w]hen the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence."   *Id.* (citing *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) (op. on reh'g)).

19

**B.   Analysis**

Robinson's counsel filed a motion to withdraw one month before trial.   Following a hearing, which Robinson herself did not attend despite receiving separate notice, the trial court granted counsel's motion to withdraw.   On the day of trial, Robinson presented an oral motion for continuance so that she would have time to obtain new counsel.

Robinson relies principally on *Villegas* in arguing that the trial court's denial of her oral motion was an abuse of discretion.   In *Villegas*, the trial court granted a motion to withdraw (alleging irreconcilable differences) two days before trial.   *Id*. at 625.   Villegas appeared for trial without counsel and asked for a continuance because:   he learned of his counsel's intention to withdraw only six days earlier; his counsel refused to turn over his file; he had located new counsel to represent him, but the new counsel would not represent him until he reviewed the file; and his new counsel called his previous attorney requesting the file but his call was not returned.   *Id.* at 625–26.   The trial court denied Villegas's request for a continuance, and the case proceeded to trial, resulting in an adverse judgment.   *Id*. at 626.   The Supreme Court held that the trial court abused its discretion because counsel's withdrawal was not due to any fault or negligence on Villegas's part and Villegas did not have adequate time to secure new counsel or prepare for trial.   *Id.*   Under such circumstances, the court declined to apply the presumption that a trial court does not abuse its discretion when denying a motion for continuance unsupported by affidavit.   *Id.*

In contrast to *Villegas*, Robinson received notice of her counsel's motion to withdraw a month before trial.   The clerk of the court also sent Robinson separate notice

20

of the hearing date for the motion. Nevertheless, Robinson did not appear at the hearing, file a motion for continuance in the intervening month, or otherwise offer opposition to the motion to withdraw. Further, Robinson did not demonstrate to the trial court her diligence in attempting to retain new counsel. Her only explanation in that regard was that she was told by an unnamed lawyer that the trial court would not grant the motion to withdraw.

We further note that the trial setting was previously delayed on three occasions by Robinson. The first delay resulted from Robinson's unsuccessful attempt to remove the case to federal court. After the case was remanded to state court, the trial court granted a motion for continuance when Robinson's first trial counsel withdrew due to purported "personal differences over issues pertaining to [the] litigation[.]" Robinson retained a second attorney who was successful in obtaining yet another continuance of the trial setting. Robinson's second attorney was ultimately permitted to withdraw, resulting in Robinson's oral motion for continuance. In summary, two separate attorneys represented Robinson, and the cumulated continuances of the original trial setting exceeded two years.

Unlike *Villegas*, the trial court could have reasonably found that Robinson's unrepresented status was the result of her own fault or negligence. On this record, we cannot conclude that the trial court acted arbitrarily or without reference to any guiding rules or principles. *See Marchand*, 83 S.W.3d at 800. We overrule Robinson's fifth issue.

21

## V. POST-JUDGMENT INTEREST AND TRAVEL EXPENSES

By her sixth issue, Robinson argues that the trial court's award of post-judgment interest at a rate of 8.25% exceeded the rate allowed by statute. She also argues that the trial court erred in awarding travel expenses attendant to litigation in the amount of $2,500. We agree.

Post-judgment interest rates are controlled by statute. *See* TEX. FIN. CODE ANN. § 304.003 (West, Westlaw through 2017 1st C.S.) (directing the "consumer credit commissioner [to] determine the post-judgment interest rate" as set forth in the statute). On the date of the trial court's judgment, April 1, 2016, the published post-judgment interest rate was five percent.[5] *See Pettus v. Pettus*, 237 S.W.3d 405, 423 (Tex. App.—Fort Worth 2007, pet. denied) (taking judicial notice of the post-judgment interest rate on appeal). The interest rate reflected in the judgment is therefore excessive.

Robinson also argues that the trial court erred in awarding travel expenses. The general rule in Texas is that expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery for such items is expressly provided for by contract or statutory provision. *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967); *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838 (Tex. App.—Eastland 1984, no writ). Furthermore, travel expenses are not recoverable as costs associated with litigation. *Shaikh v. Aerovias de Mexico*, 127 S.W.3d 76, 82 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Wallace v. Briggs*, 162 Tex. 485, 348 S.W.2d

---

[5] *See* "Judgment Rate Summary," Texas Office of Consumer Credit Commissioner at http://occc.texas.gov/sites/default/files/uploads/interest/judgement-rate-summary.pdf (last visited on March 14, 2018).

523, 527 (1961)).

We have the authority to modify incorrect judgments when the necessary information is available for us to do so. *See* TEX. R. APP. P. 43.2(b); *In re Estate of Tyner*, 292 S.W.3d 179, 183 (Tex. App.—Tyler 2009, no pet.). We therefore modify the judgment to reflect the correct post-judgment interest rate of five percent and to delete the award of $2,500 in travel expenses. *See In re Estate of Tyner*, 292 S.W.3d at 183. We sustain Robinson's sixth issue.

## VI. CONCLUSION

We modify the trial court's judgment by deleting the award of travel expenses in the amount of $2,500 and by changing the post-judgment interest rate to five percent. We affirm the trial court's judgment as modified.

LETICIA HINOJOSA
Justice

Delivered and filed the
5th day of April, 2018.

23